22715.   SCOTT *v.* THE STATE.

214

H. B. Moss, Mozley & Gann, for plaintiff in error.

George D. Anderson, solicitor-general, contra.

MacIntyre, J. The indictment in this case charges that on June 6, 1932, in Cobb county, Georgia, Elmer Pressley, T. S. Scott, Henry Stewart, R. S. Wright, and Albert Borders did "wrongfully and fraudulently take, steal, and carry away with intent to steal the same, nine white leghorn chicken hens, the personal goods and private property of P. J. Turner, and being of the value of six dollars." On July 26, 1932, a jury found T. S. Scott, the plaintiff in error, guilty. The exception here is to the judgment overruling Scott's motion for a new trial, based upon the general and four special grounds.

P. J. Turner, sworn for the State, testified, in substance, that on or about June 6, 1932, nine white leghorn hens of the value of $6 were taken from his place in Cobb county, and that he subsequently found said chickens "at Tony's place in Fulton county." O. S. Tony, sworn for the State, testified, in substance, that for several years he had been engaged in the poultry business in Atlanta, Ga.; that on June 7, 1932, he bought from Scott "the same chickens Mr. P. J. Turner identified and got;" that he had purchased chickens from Scott two or three times before; and that Scott brought said chickens to witness's place in an automobile. D. O. Steed, sworn for the State, testified, in substance, that on June 6, 1932, certain chickens other than those described in the indictment and a chicken coop were taken from his home located about one and a half miles below Mableton; that he recovered two of said chickens and said coop from Elmer Pressley's place in Atlanta, Ga.; and that witness never recovered any of said chickens from Scott, and never saw Scott in possession of any of them. J. L. Moon, sworn for the State, testified, in substance, that on June 3, 1932, he lost from his home near Mableton, Cobb county, Ga., seven Plymouth Rock hens, one white leghorn hen, and "five mixed chicken hens;" that wit-

ness lived near Mableton; and that he recovered a "barred Plymouth Rock rooster" (which was also lost from the same place at the same time) from Elmer Pressley's place, but had never seen the defendant in possession of any of said chickens. Ernest Moss, sworn for the State, testified, in substance, that when he arrested Scott, Scott told witness that if he would take him, defendant, to Lyndon Alley, "he would show the other fellows that was with him," and that "Albert Borders and Hence Stewart was at Albert Borders's home on Lyndon avenue when we drove up." L. P. Williams, sworn for the State, testified, in substance, that on May 6, 1932, he lost from his place near Mableton certain chickens other than those described in the indictment, and that on the next day he found one of said chickens at Scott's place. Mrs. Mary Willis, sworn for the State, testified, in substance, that at a time (not stated) she lost chickens other than those described in the indictment and "got back one black hen at Scott's."

Several witnesses sworn for the defendant testified, in effect, that the chickens alleged to have been stolen had been in Scott's possession long prior to the time that P. J. Turner missed his chickens. Albert Borders, sworn for the defendant, testified, in substance, that on June 7, 1932, he bought two coops of chickens from a white man on Lyndon Alley; that "We took the chickens to Tony's place and he bought them from me;" that Tony paid witness for the chickens, and that Scott had nothing to do with the chickens except to deliver them; that witness repaid Elmer Pressley $4 he had borrowed from him to help pay for the chickens, and paid Scott $2 for "taxie services;" and that only witness, Pressley, and Scott were in the automobile which carried the chickens to Tony's place. Hence Stewart testified that he was not present when said chickens were bought or sold, or when they were delivered. In the main, the defendant's statement to the jury closely follows the testimony of the witness Borders. However, the defendant stated also to the jury that Elmer Pressley bought a barred-rock rooster from the same white man from whom Borders purchased the other chickens.

We are satisfied that the evidence supports the verdict, and hold that the trial judge did not err in overruling the general grounds of the motion for a new trial.

In their brief counsel for plaintiff in error state that grounds 2, 3, and 4 of the amendment to the motion for a new trial "are based

upon the same principle of law," and they argue these grounds together. The four grounds mentioned will be considered in reverse order.

It is averred in special ground 4 that the court erred in admitting certain evidence over the objection that it was "irrelevant and immaterial." The objection is too general to present anything for the consideration of this court. *Hayes* v. *State,* 36 *Ga. App.* 668 (1-*e*) (137 S. E. 860); *York* v. *State,* 42 *Ga. App.* 453 (30) (156 S. E. 733); *Richardson* v. *State,* 141 *Ga.* 782 (2) (82 S. E. 134).

It appears from special ground 3 that the trial judge permitted the prosecutor, L. P. Williams, to testify in effect that on May 6, 1932, he lost from his place near Mableton, Cobb county, Ga., certain chickens other than those described in the indictment, and on June 7, 1932, recovered one of said chickens at Scott's place. It is averred in the ground that the court erred in admitting said testimony over the objection that it was "irrelevant and impertinent to the issue involved, and would only have been circumstantial in the trial of a case for stealing L. P. Williams' chickens, and was not even circumstantial in the case on trial."

"When one is on trial charged with the commission of a crime, proof of a distinct, independent, and separate offense is never admissible, unless there is some logical connection between the two from which it can be said that proof of the one tends to establish the other. This is the general rule, but there are some exceptions to it; as when the extraneous crime forms part of the res gestæ; or is one of a system of mutually dependent crimes; or is evidence of guilty knowledge; or may bear upon the question of the identity of the accused, or articles connected with the offense; or is evidence of prior attempts by the accused to commit the same crime upon the victim of the offense for which he stands charged; or where it tends to prove malice, intent, motive, or the like, if such an element enters into the offense charged. Penal Code (1910), § 1019; *Cawthon* v. *State,* 119 *Ga.* 395 (46 S. E. 897)." *Cox* v. *State,* 165 *Ga.* 145 (139 S. E. 861).

Does the admission of the evidence complained of violate the general rule, or does it come within one of the exceptions? Simple larceny is defined in the Penal Code (1910), § 152, as the "wrongful and fraudulent taking and carrying away, by any person, of the personal goods of another, with intent to steal the same." Un-

der this definition the guilt of the accused depends upon the intent with which the act was committed, and intent is a material ingredient of the crime. *Jackson* v. *State,* 116 *Ga.* 578 (42 S. E. 750). Whenever intent or guilty knowledge is a material ingredient in the issue of the case, other acts of a similar character tending to establish such intent or knowledge are proper evidence. *Farmer* v. *State,* 100 *Ga.* 41, 44 (28 S. E. 26). While it is true that the evidence complained of relates to a distinct, independent, and separate offense committed against a different party, evidence of the other crime is relevant and admissible, it being of a similar nature and so related in kind as to show, or tend to show, a particular criminal intent which is necessary to make out the offense, and being sufficiently near in point of time to the act charged to throw light upon the question of intent.

There is a class of criminal cases in which proof that the defendant intended to do the prohibited act is all that is necessary; for ignorance of the law is no excuse. If the accused did the act, the law presumes that he knew it was criminal and that he intended to commit the crime. Rape is a good example of this class of cases, for if the defendant have carnal knowledge of a female forcibly and against her will, it is not necessary to prove what he intended, for if he committed the unlawful act the law presumes the intention to rape and the crime is complete, and evidence of similar transactions committed by the defendant at about the same time as the offense charged, which relate to separate, independent, and distinct offenses, would not be admissible, to show intent because it would come within the general rule. *Cox* v. *State,* supra. In simple larceny the crime is not complete until the intent is shown. This intent is not presumed when the taking and carrying away of the personal goods of another is proved, but the additional ingredient of intent to steal must be proved. It is true that the law says that proof that the property was wrongfully and fraudulently taken and carried away, and that the recently stolen property was found in the possession of the defendant, would be facts and circumstances from which the jury might, if they saw fit, arrive at the conclusion that the possession was guilty possession, and that the defendant came into possession of the property with intent to steal the same,—yet this is a rule of evidence, and not a presumption of law. *Wiley* v. *State,* 3 *Ga. App.* 120 (2) (59

S. E. 438); *Cuthbert* v. *State*, 3 *Ga. App.* 600 (60 S. E. 322); *Love* v. *State*, 9 *Ga. App.* 874 (72 S. E. 433). The evidence in the case at bar comes within the exception to the general rule, and was properly admitted. In this connection see *McDuffie* v. *State*, 17 *Ga. App.* 342 (5) (86 S. E. 821); *Goldberg* v. *State*, 20 *Ga. App.* 162 (2) (92 S. E. 957).

It is averred in special ground 2 that the court erred in admitting certain evidence. The objection was that the evidence was "neither relevant nor pertinent in the case on trial." This objection was too general to present any question for the consideration of this court. See cases cited in our discussion of special ground 4.

Special ground 1 complains of the admission, over objection, of the testimony of the witness D. O. Steed. The objection interposed is almost identical with that set out in special ground 3, and the question of law raised here is the same one discussed in that ground. For reasons indicated in our treatment of special ground 3, we hold that there is no merit in the ground under consideration.

For no reason assigned did the trial judge err in overruling the motion for a new trial.

*Judgment affirmed.* *Broyles, C. J., and Hooper, J., concur.*